## NEW YORK LIFE INS. CO. v. BOWERS, Internal Revenue Collector.

District Court, S. D. New York.  May 25, 1929.

James H. McIntosh, of New York City, for plaintiff.

Charles H. Tuttle, U. S. Atty., of New York City (Samuel C. Coleman, of New York City, of counsel), for defendant.

MACK, Circuit Judge.  Action to recover capital stock taxes assessed under title 10 of the 1918 Revenue Act, 40 Stat. 1126, §§ 1000–1009, tried upon stipulated facts.

The first question is whether, admitting the applicability of the 1918 act for the years in question, the assets of plaintiff in respect to which the assessment was made were taxable thereunder.  For each of the years these assets were: . (1) Such sums as about two weeks after the close of the year the corporate officers resolved to take out of the undivided surplus account for payment as annual dividends to policyholders having the right to share in surplus on the next anniversary of their policies;  (2) sums taken out of the surplus account in like manner for payment as accumulated dividends to holders of deferred dividend policies maturing during the course of the ensuing year; (3) the aggregate of dividends provisionally declared out of the surplus account in previous years and for the year in question, to be held against deferred dividend policies maturing in future years.  These were held in an interim accumulation fund.

The 1918 act provides:

"Sec. 1000 (a) That on and after July 1, 1918, in lieu of the tax imposed by the first subdivision of section 407 of the Revenue Act of 1916—

"(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included;

"(2) Every foreign corporation shall pay annually a special excise tax with respect to carrying on or doing business in the United States, equivalent to $1 for each $1,000 of the average amount of capital employed in the transaction of its business in the United States during the preceding year ending June thirtieth.

"(b) In computing the tax in the case of insurance companies such deposits and reserve funds as they are required by law or contract to maintain or hold for the protection of or payment to or apportionment among policyholders shall not be included.

"(c) The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business (or in the case of a foreign corporation not engaged in business in the United States) during the preceding year ending June 30, nor to any corporation enumerated in section 231. The taxes imposed by this section shall apply to mutual insurance companies, and in the case of every such domestic company the tax shall be equivalent to $1 for each $1,000 of the excess over $5,000 of the sum of its surplus or contingent reserves maintained for the general use of the business and any reserves the net additions to which are included in net income under the provisions of Title II, as of the close of the preceding accounting period used by such company for purposes of making its income tax return. * * *" 40 Stat. 1126.

The preceding act of 1916 had provided merely (section 407, 39 Stat. 789) that insurance companies should be taxable upon the value of their capital stock minus certain deductions, with the result as set forth in Regs. 38, art. 2b (T. D. 2383), that "Inasmuch as the basis of tax is the fair value of the stock of a corporation, mutual insurance companies and other associations not having a stock represented by shares will also be exempt from tax, in the absence of a basis for the computation of the tax." The

legislative history of the 1918 act shows clearly that Congress intended thereby to establish an effective basis of taxation for mutual life insurance companies. In spite of this evident intention, plaintiff contends for an interpretation of the statute which makes it almost as wholly inoperative as the 1916 act, not only in the present case, but necessarily also in other cases.

It is argued that subdivision (b) of section 1000, providing for the deduction of "such deposits and reserve funds as they are required by law or contract to maintain or hold for the protection of or payment to or apportionment among policyholders shall not be included," applies also to the parts of subdivision (c) governing mutual companies. The arrangement of the provisions indicates the contrary; for example, the parts of (c) in question are isolated from (b) by another provision so wholly distinct that its placement there would be unreasonable if what followed it were intended to refer back to what preceded it. But in any event the more specific (c) would supersede (b) rather than be limited by it; fair interpretation often requires that one of two provisions be read broadly enough to conflict with and override another rather than that it be limited to a meaning not inconsistent with the other. See Hopkins v. Zeigler (C. C. A.) 259 F. 43, 47. The application of a capital stock tax to mutual and to stock insurance companies presents such different problems that in order to effect equality of treatment there must be formally different rules for the two, not the same rule, as plaintiff contends. For example, since the capital stock tax takes account of the market value of stock as well as the asset value, it is possible greatly to enhance the assessments of insurance stock by reason of the highly valuable element of control, while the same factor must be disregarded in the assessment of mutual companies; therefore, by way of equalization, deductions allowed in the former assessments may well be denied in the latter. If these considerations did not sufficiently disprove the applicability of subdivision (b), it would be necessary to consider whether the assets here in question are such as (b) refers to, in view of the fact that, until they were ascertained in the middle of January of the next succeeding year, there were no such specific funds or accounts on the books subject to either legal or contractual requirements specified in (b). On the other hand, in a mutual company, the entire property of the company, including all deposits and reserve funds subject only to liabilities are held for "pay-

ment to or apportionment among policyholders," inasmuch as they are the only ones to share therein.

■ Subdivision (c) taxes, inter alia, "surplus or contingent reserves maintained for the general use of the business," and in my judgment the three items here in question were part of such surplus for the taxable year. They were not, as plaintiff designates them, a trust fund; and they were not a liability except in the accounting sense. The first two items existed throughout the year as an unsegregated part of the corporate assets; nobody had any claim to them as against the corporation until at the earliest the middle of January of the next year, when the directors in their discretion decided how much should be set aside for the payment of dividends. They were like any undistributed corporate surplus. The same is demonstrably true of the interim accumulation fund, to which nobody could have any claim for at least thirteen months to come. It is immaterial whether the phrase, "maintained for the general use of the business," modifies "surplus" as well as "contingent reserves," for in a sense any surplus of an insurance company is necessarily maintained for the general use of the business, being employed in the financial operations and available to meet obligations. If in fact any or all of these amounts had been segregated by the company and specifically maintained as trust funds for the intended beneficiaries, a totally different situation would be presented. They would then be no part of the surplus; they could not be reached by creditors; but naturally the financial stability of the company would be correspondingly impaired.

It is not necessary to decide whether the three items would not also be taxable as reserves (using that word in a perhaps nontechnical sense) "the net additions to which are included in net income under the provisions of Title II"; but certainly there is nothing in title 2 which would prevent such characterization.

The contention has not been made that the amounts stipulated as surplus on hand at the end of each year in question may exceed the fair average surplus on hand during the year (not including dividends already declared for payment on anniversaries occurring later in the year), and that it may have been the intent of the statute to designate this *average* amount as the basis; moreover, no figures have been stipulated by which the average could be computed.

■ We come then to the second question in the case, namely, whether the capital stock tax provisions of title 10, § 1000, of the 1918 Revenue act (40 Stat. 1126), applicable to mutual life insurance companies, were in force during the two years beginning July 1st of 1920 and 1921.

The Revenue Act of 1921 became law on November 23, 1921. Section 243 (42 Stat. 261) provided "that in lieu of the taxes imposed by Sections 230 and 1000 and by Title III, there shall be levied, collected, and paid for the calendar year 1921 and for each taxable year thereafter upon the net income of every life insurance company * * * " a tax measured by income. Section 1400 (42 Stat. 320) read: "That the following parts of the Revenue Act of 1918 are repealed, to take effect (except as otherwise provided in this Act) on January 1, 1922, subject to the limitations provided in subdivision (b) * * * Title X." The subdivision referred to was: "The parts of the Revenue Act of 1918 which are repealed by this Act shall (unless otherwise 'specifically provided in this Act) remain in force for the assessment and collection of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect. * * * In the case of any tax imposed by any part of the Revenue Act of 1918 repealed by this Act, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act. * * * "

In my judgment the 1918 act was in effect during the period covered by the third but not by the fourth assessment. The capital stock tax payable on July 1st of any year was for the privilege of doing business during the year just elapsed, as is shown by the fact that corporations which had not engaged in business during the preceding year were not subject thereto, even more clearly than by the fact that its measure was the average value of the capital stock during the preceding year. Therefore, on July 1, 1921, plaintiff came under an absolute liability to pay taxes for the privilege theretofore exercised. A statute enacted after that date might admittedly relieve it of this liability, but such congressional intent is not lightly to be presumed. Here, on the contrary, the 1921 act specifically provided that the 1918 act was repealed only as of January 1, 1922. It is true that an income tax was by the 1921 act, section 243, imposed for the year beginning January 1, 1921. This section was not, however, as plaintiff contends, in lieu of the 1918 tax; it was in lieu of the provisions of the 1921 act, governing the taxation of corpora-

tions generally. Without deciding whether Wilmington Trust Co. v. U. S. (D. C.) 28 F.(2d) 205, would be followed even if in point, it suffices that the case is distinguishable, for the reason, among others, that the estate tax there involved was regarded by the court as imposing no liability until one year after death, a date later than the passage of the 1921 act.

On the other hand, the tax collected under the fourth assessment was for the privilege of doing business between July 1, 1921, and June 30, 1922; it would have become due only on July 1, 1922, whereas the repeal had become effective on January 1st. It is immaterial that the taxing statute was in effect during half the period, since Congress did not, and this court cannot, adopt any new measure of liability or a new date for its accrual. Subdivision (b) of section 1400 does not keep the 1918 provision alive, since the tax had not accrued by January 1st and no substitute tax was to come into effect after the repeal date; the report of the Senate Finance Committee accompanying the Revenue Act of 1921 likewise is not inconsistent with the foregoing.

Plaintiff therefore is entitled to judgment for the sum collected pursuant to the assessment for the year ending June 30, 1922, namely, $94,134, together with interest.